UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

MICHAEL LENZ,

    Plaintiff,

    v.                                               Case No. 16-C-0977

ROBERT W. BAIRD & CO. INC.,

    Defendant.

---

ORDER DENYING MOTION FOR LEAVE TO FILE UNAUTHORIZED MOTION (DOC. 3), GRANTING MOTION TO DISMISS (DOC. 6), DENYING MOTION FOR LEAVE TO FILE AND RECEIVE NOTICES ELECTRONICALLY (DOC. 11), DENYING MOTIONS FOR JUDICIAL NOTICE (DOCS. 12, 13, 14), AND DENYING MOTION FOR SANCTIONS (DOC. 16)

Michael Lenz sues Robert W. Baird & Co. for damages relating to payment of funds from his Individual Retirement Account to the United States Treasury and Baird's issuance of a form 1099R regarding those funds. Lenz asserts that Baird violated the Fourth and Fifth Amendments, 26 U.S.C. § 72(t)(2)(A)(vii), and 26 U.S.C. § 7434. He also filed several motions which remain pending. Meanwhile, Baird asks that this case be dismissed. All of the motions are addressed below.

MOTION FOR LEAVE TO FILE A MOTION FOR EVIDENCE OF AUTHORITY

Lenz's first motion is for leave, under Civil L.R. 7(i),[1] to file a "Verified Motion for Admissible Evidence of Authority." The motion he wishes to file (located at Doc. 3-1) seeks an order directing the clerk of court to "obtain and enter into the record authenticated copies" of this judge's oath of office, commission under seal, and designation and assignment order. The theory underlying the motion is that the undersigned judge lacks

---

[1] Civil L.R. 7(i) provides that "[a]ny paper, including any motion . . . not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to a motion requesting leave to file it. If the Court grants the motion, the Clerk of Court must then file the paper."

authority to decide this case because of his senior status. Lenz points to, among other statutes, 28 U.S.C. § 132(b), which states that each district court consists of judges in regular active service.

This judge's commission was signed on July 29, 1996, and he began regular active service on July 31, 1996, after taking the oath of office, through October 31, 2012, when he took senior status.

Title 28 U.S.C. § 371(b) (emphasis added) provides that any federal judge "*may retain the office* but retire from regular active service" after meeting certain age and service requirements. Title 28 U.S.C. § 294(b) provides that any federal judge who has retired from regular active service is known as a "senior judge" and "may continue to perform such judicial duties as he is willing and able to undertake, when designated and assigned." No retired judge shall perform judicial duties except when designated and assigned. § 294(e). "Senior judges are fully commissioned Article III judges, and the Supreme Court has expressly held that upon assuming senior status, a senior judge 'does not surrender his commission, but continues to act under it.'" *Williams v. Decker*, 767 F.3d 734, 743 (8th Cir. 2014). This is so, notwithstanding that a successor (Hon. Pamela Pepper) to this judge has been appointed to the district court bench. *See* § 371(d); *see also United States v. Teresi*, 484 F.2d 894, 898 (7th Cir. 1983) ("We deem it irrelevant for this purpose that Judge Perry is a senior judge, who had retired from regular active service under 28 U.S.C. § 371(b). For the period in question Judge Perry was designated and assigned by the chief judge of the circuit to perform the duties of district judge in the northern district of Illinois. '[J]urisdiction is lodged in a court, not in a person. The judge, exercising the jurisdiction, acts for the

court.' . . . In any particular matter, Judge Perry could exercise the jurisdiction of the court to the same extent as any judge in regular active service." (citation omitted)).

This judge met the required age and service requirements and chose to take senior status as of November 1, 2012. Otherwise, the undersigned judge has executed all of his judicial duties, with the appropriate approvals. Each year, Chief Judge Diane Wood has designated and assigned this judge to continue performing judicial duties. Interestingly, after this case was filed, Lenz wrote to Eastern District of Wisconsin Chief Judge Griesbach questioning the authority of the undersigned judge and was advised by him that this judge is authorized to handle this case.

As this senior judge maintains authority to act in assigned cases, the clerk of court will not be required to obtain and docket authenticated copies of the materials that Lenz seeks. Hence, the motion for leave to file a motion seeking such authentication will be denied.

MOTIONS FOR JUDICIAL NOTICE

Next, for consideration are three motions asking the court to take judicial notice of "adjudicative facts of law" under Fed. R. Evid. 201. Rule 201 governs judicial notice of "adjudicative fact[s]" and provides that the court may take judicial notice of "a fact that is not subject to reasonable dispute" because it is either generally known within the court's jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a), (b).

However, the matters that Lenz wishes the court to notice are not facts. The court may take judicial notice of facts such as whether February 14, 2017, is Valentine's Day, or whether the federal courthouse in which this judge sits is in Milwaukee, Wisconsin. Here,

3

Lenz requests the court to judicially notice his *interpretations of law*.  For instance, in one motion Lenz asks the court to take judicial notice that the terms "internal revenue tax" and "taxpayer" have particular meanings.[2]  (Doc. 12.)  Another motion, seeks judicial notice that "the legislative term of art 'trade or business' is limited to the class of activity related only to the performance of functions of a federal public office to the exclusion of all other classes of activity" and that Congress was granted exclusive legislative power over the District of Columbia.  (Doc. 13 at 1–2.)  Lenz argues that the plain text of definitions in Title 26 of the United States Code, rules of statutory construction, and Supreme Court case law have limited the term "trade or business" as he contends.  He bases his arguments on several things, including legal maxims.  (*See, e.g.,* Doc. 13 at 5, 11–13; Doc. 14 at 3, 6, 7.)  And he submits that Congress has no legislative jurisdiction within the boundaries of the several states.  (*See, e.g.,* Doc. 14 at 6–7.)

The meaning of statutory terms is a matter of law, not fact.  Lenz's references to the court's need to review legislative history, Supreme Court case law, and the Internal Revenue Code of 1986 for support of his interpretations (*see, e.g.,* Doc. 12 at 5; Doc. 13 at 6, 7–8) highlight that pending requests for judicial notice invite legal interpretations.  References to "adjudicative facts *of law*" (emphasis added) throughout the motions for judicial notice confirm that Lenz's requests extend beyond the "adjudicative facts" governed by Rule 201 to legal interpretations.  Thus, these motions will be denied.

---

[2]Lenz argues that "internal revenue tax" means a tax levied upon objects of interstate commerce, not income, and that a taxpayer is restricted to those liable for a tax on objects in his or her possession.  (*See* Doc. 11 at 3–5.)

BAIRD'S MOTION TO DISMISS AND LENZ'S MOTION FOR SANCTIONS

Pursuant to Fed. R. Civ. P. 12(b)(6), Baird moves to dismiss the case. A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Rule 12(b)(6) requires a plaintiff to clear two hurdles with his or her complaint. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must describe the claim in sufficient detail to give a defendant fair notice of the claim and the grounds on which it rests. *Id.* Baird does not contend that the complaint fails this requirement.

Second, the complaint must set forth a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads [himself] out of court." *EEOC*, 496 F.3d at 776 (citing *Bell Atl. Corp.*, 550 U.S. at 555-56, 569 n.14 (2007)). As for this requirement, Baird contends that even if Lenz's allegations are true, the complaint fails to state a plausible claim and that Lenz has pleaded himself out of court.

The complaint asserts that Baird managed Lenz's assets and had a fiduciary duty of reasonable care regarding those assets. (Doc. 1 at 3–4.) An exhibit attached to the complaint indicates those assets were in an Individual Retirement Account (IRA) ending in

8492. (Doc. 1 Ex. 2 at 1.) In a letter dated October 20, 2014, Baird informed Lenz that it had received a notice directing it to seize and transfer money from Lenz's account. (Doc. 1 at 4.) An attachment to the complaint indicates that Baird provided Lenz a copy of that document titled "Taxpayer's Copy of Notice of Levy" which had been sent to Baird by the Department of the Treasury—Internal Revenue Service. (Doc. 1 at 4–5, Ex. 2 at 1; Doc. 7 Ex. 1.) The notice of levy indicated that it was issued by the IRS to collect money owed by Lenz in the amount of $7064.50 and that even though the IRS had given required notice and demand, Lenz had not paid the amount owed. (Doc. 7 Ex. 1.[3]) The notice of levy did not contain any seal, warrant, verification, written delegation of authority from a person in an office established by Congress, or judicial directive. (Doc. 1 at 4.)

Lenz responded with a notice of intent to file suit against Baird. (Doc. 1 at 4–5, Ex. 2.) Nevertheless, Baird issued a check dated November 11, 2014, payable to the United States Treasury in the amount of $7064.50. (Doc. 1 at 5.) The check was issued without Lenz's consent and without evidence that a court issued a writ of attachment or warrant. (*Id.*)

Further, the complaint charges that Baird withheld an additional $784.94, labeled as "FED W/H PRE-DIST" on the check summary, purportedly under the authority of 26 U.S.C. § 72(t)(1). Lenz contends that § 72(t)(1) applies only to taxpayers and that Baird had no

---

[3] Baird presented a copy of the notice of levy with its motion to dismiss. Documents submitted with a motion to dismiss may be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to a claim. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). This rule prevents parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents to the complaint. *188 LLC*, 300 F.3d at 735. The exception is narrow; it is generally aimed at situations in which a plaintiff quotes from a document or the case requires interpretation of an unattached contract. *Tierney*, 304 F.3d at 738. "It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment . . . ." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Here, the complaint and its attachments reference the notice of levy, and the notice of levy is central to Lenz's claims. Therefore, the court will consider it. Lenz agrees that consideration of the notice of levy is proper because the notice of levy is referenced in several paragraphs of his complaint. (Doc. 15 at 2 n.4.)

6

evidence that he was a taxpayer as defined in tax laws. (Doc. 1 at 6.) Further, according to the complaint, even if Lenz was a taxpayer, § 72(t)(2)(A)(vii) provides that the ten-percent tax on an early distribution shall not apply to distributions made on account of a levy. (*Id.*)

Finally, the complaint asserts that Baird disclosed Lenz's private (and protected) financial information on a Form 1099R without his authorization or a warrant. (Doc. 1 at 8.) The 1099R reported that Baird paid Lenz the amounts of $7064.50 and $784.94 even though the payments were made to the United States Treasury. (Doc. 1 at 8.) Lenz objected to the 1099R filing in a letter sent to the Department of Treasury on April 11, 2015. However, the Department of the Treasury did not correct the filing or return the $784.94. (Doc. 1 at 8.) Moreover, Baird declined Lenz's July 2016 offer to cure the issue. (Doc. 1 at 9, Exs. 3, 4.)

The Wisconsin Department of Revenue used the 1099R information to assess an income tax of $418.00 on the payment of $7064.50 and a thirty-three percent penalty of $259 on the $784.94. (Doc. 1 at 9.) The Wisconsin Department of Revenue has not abated its assessments. (Doc. 1 at 9.)

In an attachment to the complaint, Lenz declares that he is an American citizen born within the boundaries of Ohio, is domiciled within the boundaries of Wisconsin, and has not and does not work for any federal or state government. Further, to the best of his knowledge, he has not been involved in any activity that has been made the subject of a tax, his property is not "under the administrative jurisdiction" of the federal or any state government, he is not subject to an internal revenue tax, he received payments only from private-sector entities or persons, and the Social Security Administration assigned a number to him before he attained the legal age to consent to it. (Doc. 1 Ex. 1 at 1–2.)

According to the complaint, Baird's actions violated the Fourth and Fifth Amendments, 26 U.S.C. § 72(t)(2)(A)(vii), and 26 U.S.C. § 7434.

A. Count One: payment of the $7064.50

Title 26 U.S.C. § 6331(a) provides that the federal government may collect taxes of a delinquent taxpayer "by levy upon all property and rights to property . . . belonging to such person." The complaint and various motions and briefs in this case indicate that Lenz challenges the IRS's imposition of the levy. Lenz, interpreting the law as he sees it, contends that he is not a taxpayer and owed no taxes.

But Lenz has brought this case against Baird, a mere custodian or trustee of his funds. However, Baird is protected by statute against liability to Lenz for complying with the IRS's notice of levy. Lenz's right to liquidate his IRA and withdraw funds from it, even if subject to an interest penalty, constituted a right to property subject to the IRS's levy power under § 6331(a). *Kane v. Capital Guardian Tr. Co.*, 145 F.3d 1218, 1223 (10th Cir. 1998). It was not up to Baird to challenge the propriety of the IRS's levy on that right to property. Instead, 26 U.S.C. § 6332(a) required Baird to comply with the IRS's direction to hand over Lenz's assets: "any person in possession of . . . property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights . . . to the Secretary." Had Baird not complied, it faced liability and a possible fifty-percent penalty. § 6332(d). And importantly, the statute protects a third party complying with a levy from liability regarding handing the property over to the IRS or United States Treasury:

> [a]ny person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or

8

> discharges such obligation) to the Secretary . . . shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

§ 6332(e).

In his complaint, Lenz admits that Baird held his assets or right to assets at the time it received a notice of levy from the IRS and that Baird turned over to the IRS an amount from his IRA equal to the amount on the notice of levy. The notice of levy identified Lenz as a taxpayer (Doc. 7 Ex. 1), and Baird was not required to determine whether the IRS was correct in that identification as far as compliance with the levy was concerned. However, Baird could not challenge the validity of the levy. *See Moore v. Gen. Motors Pension Plans*, 91 F.3d 848, 851 (7th Cir. 1996). A financial institution "served with a notice of levy has two, and only two, possible defenses for failure to comply with the demand: that it is not in possession of property of the taxpayer, or that the property is subject to a prior judicial attachment or execution" *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 727 (1985); *Moore*, 91 F.3d at 851. Contrary to Lenz's belief, the administrative levy created in § 6331 typically does not require any judicial intervention or approval. *See Nat'l Bank of Commerce*, 472 U.S. at 720. And an individual's challenge to the validity of the levy does not alter the institution's obligation to comply with it. *Moore*, 91 F.3d at 851.

Moreover, regardless of whether the levy served on Baird was valid, Baird is immune from liability to Lenz. Whether Lenz is a "taxpayer" as statutorily defined makes no difference regarding Baird's protection against liability to Lenz. Section 6332(e) discharges liability to the taxpayer as well as "any other person with respect to such property or rights

to property arising from such surrender or payment." Thus, Baird is absolved from any liability for turning the $7064.50 over to the United States Treasury.

Lenz contends that Baird's argument is based on an affirmative defense, which cannot be decided on a Rule 12(b)(6) motion to dismiss. While the existence of a potential affirmative defense generally does not render a claim invalid, dismissal is permitted when the complaint's allegations set forth everything necessary to establish the affirmative defense. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). In other words, the court may grant a Rule 12(b)(6) motion when the plaintiff affirmatively pleads himself out of court. *Id.* Here, Lenz pleaded himself out of court. The allegations in his complaint and its attachments, plus the notice of levy submitted by Baird, indicate that Baird was required to comply with the IRS levy and is absolved of liability by § 6332(e). Consequently, Baird is entitled to dismissal of count one regarding its payment of $7064.50 to the IRS.

B.   Count Two: payment of the $784.94

Regarding the $784.94 apparently distributed and paid as withholding for taxes on the $7064.50 distribution, the complaint and attachments indicate that the assets Baird held on Lenz's behalf were in an IRA. Title 26 U.S.C. § 72(t)(1) provides that early distributions from qualified retirement plans cause the imposition of an additional tax equal to ten percent of the amount included in gross income. However, the ten-percent early-distribution penalty does not apply to distributions made on account of a levy under 26 U.S.C. § 6331 on the qualified retirement plan. § 72(t)(2)(A)(vii). This court cannot tell from the allegations in and documents attached to the complaint whether the $784.94 constituted regular withholding on pretax contributions to and earnings of the IRA or was

a ten-percent penalty that may have unnecessary pursuant to § 72(t)(2)(A)(vii). (Baird's brief suggests that the amount was, indeed, a ten-percent penalty.) However, the court must construe Lenz's pro se complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Lenz alleges that the amount included the latter, and the court must take those allegations as true. Baird may have paid to the IRS on Lenz's behalf a ten-percent penalty on the $7064.50 distribution even though the penalty should not have been assessed.

Nevertheless, it finds that the discharge of liability in § 6332(e) extends to this amount, too. Section 6332(e) discharges any person in possession of property subject to levy (here, Baird, which held the $7064.50) who surrenders that property (which Baird did) from *any* obligation or liability to the taxpayer or other person *"arising from such surrender or payment."* The additional payment of money from Lenz's account to the IRS to cover a ten-percent penalty under § 72(t) *arose from* the distribution required by the notice of levy. "Arise" generally means to originate from or occur as a natural consequence of a particular source. New Lexicon Webster's Dictionary of the English Language 50 (1989). Here, the term should be read broadly. IRA trustees in receipt of a notice of levy or other demand from the IRS should not have to risk lawsuits from depositors if they err when deciding whether to pay the ten-percent penalty from IRA funds.

To the extent that Baird may have breached some account agreement with Lenz regarding an improper additional distribution to pay the ten-percent penalty, Lenz has disclaimed in his complaint any contract claim. Although Lenz admits that a contract between Baird and him exists, he asserts that his causes of action in the complaint "do not arise from that contract or agreement." (Doc. 1 at 4.) Lenz points only to § 72(t)(2)(A)(vii), and in his opposition brief does not highlight any basis for suing Baird for an error in

11

determining whether a ten-percent penalty under § 72(t) applied. Thus, Baird has shown that dismissal is warranted with regard to count two of the complaint.

C.     Count Three: issuance of the 1099R

In count three of the complaint Lenz asserts that Baird willfully filed a fraudulent 1099R in violation of 26 U.S.C. § 7434. Section 7434(a) creates a damages cause of action by a victim against a person who "willfully files a fraudulent information return with respect to payments purported to be made" to the victim.[4] However, the complaint and attachments establish that Baird has no liability respecting the 1099R. Baird, as the trustee of the IRA funds, had to comply with 26 C.F.R. § 1.408-7, which requires the trustee of an IRA to file a Form 1099R regarding a distribution. As indicated above, Baird had no choice but to, and did, distribute the $7064.50 to the United State Treasury. Thus, inclusion of that amount on the 1099R cannot have created liability under § 7374(a), as the filing of the form was correct. *See Cavoto v. Hayes*, No. 08 C 6957, 2010 WL 2679973, *4 (N.D. Ill. July 1, 2010) ("'To create an actionable claim under 26 U.S.C. § 7434, the information return must . . . be, among other things, inaccurate.'"). Similarly, the $784.94 also was distributed from the IRA, so the filing was not fraudulent. Whether that amount was rightly or wrongly distributed does not factor in. The amount was distributed, so the 1099R was correct. (Further, even if distribution of that amount occurred in error, Lenz fails to assert any facts suggesting that Baird made that error with a willful intent to harm him by filing a fraudulent 1099R.)

---

[4] The parties presume that a 1099R constitutes an "information return" for purposes of § 7434, but that may not be the case. Section 7434(f) limits the section to only the nine information returns listed in 26 U.S.C. § 6724(d)(1)(A). § 7434(f); *Cavoto v. Hayes*, 634 F.3d 921, 924 (7th Cir. 2011). Based on a quick review by the court, Form 1099R appears to be required by 26 U.S.C. § 408(i) and/or 26 U.S.C. § 6047, neither of which is listed in § 6724(d)(1)(A). However, as the parties did not address this issue and the claim must be dismissed even if a 1099R qualifies as an information return for purposes of § 7434, the court will not expend further time on it.

12

Lenz contends that the 1099R attributing payments *to him* was fraudulent because Baird actually paid the money from the IRA *to the United States Treasury*. (*See* Doc. 1 at 8.) However, upon levy the United States Treasury stood in the shoes of Lenz. *Nat'l Bank of Commerce*, 472 U.S. at 725. Baird paid the money to the United States Treasury on behalf of Lenz; the effect of honoring the levy was the same as if Baird had honored a request by Lenz for a withdrawal of IRA money and then Lenz had paid the IRS. *Cf. Kane*, 145 F.3d at 1224. Therefore, count three must be dismissed as well.

Because the court is dismissing all claims, there is no need to address Baird's alternative argument regarding arbitration, which Baird invited the court to consider if the complaint survived its primary challenges. (*See* Doc. 7 at 11.)

D.   Motion for sanctions

Next for consideration is Lenz's motion for sanctions which is premised on his belief that Baird's motion to dismiss had no basis in law and was brought for an improper purpose. Having found the motion to dismiss meritorious, the motion for sanctions must be denied.

## MOTION FOR LEAVE TO FILE ELECTRONICALLY

Finally, Lenz moves for leave to file documents and receive notifications of filings electronically (i.e., to "e-file"). Lenz represents himself, and pursuant to this district's policy pro se litigants are not permitted to e-file absent court authorization. Because this case is not proceeding further, the motion for permission to e-file is moot. Further, even if that were not the case, the court would choose not to deviate from the district's usual policy.

## CONCLUSION

For the above-stated reasons,

IT IS ORDERED that Lenz's motion under Civil L.R. 7(i) (Doc. 3) is denied.

IT IS FURTHER ORDERED that Lenz's motion for the court to take judicial notice (Docs. 12, 13, 14) are denied.

IT IS FURTHER ORDERED that Baird's motion to dismiss (Doc. 6) is granted.

IT IS FURTHER ORDERED that Lenz's motion for sanctions (Doc. 16) is denied.

IT IS FURTHER ORDERED that Lenz's motion for leave to file and receive notices electronically (Doc. 11) is denied.

Dated at Milwaukee, Wisconsin, this 16th day of February, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE